IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01451-RBJ

BENSON WHITNEY,

    Plaintiff,

v.

JOHN MacGREGOR, Boulder Police Officer, in his individual and his official capacities; and CITY OF BOULDER, a municipality,

    Defendants.

## ORDER

Before the Court is Defendants' Motion for Summary Judgment [ECF No. 48]. For the reasons set forth below, the motion is granted.

**I. Facts.**

The present dispute began when the plaintiff, Benson Whitney, suffered an "aura," or complex partial seizure, while at Barnsley Tire Co. in Boulder, Colorado on March 3, 2011. According to the tire shop's employees, the plaintiff began to behave bizarrely soon after arriving: he removed random items from his truck and handed them to employees, yelled loudly at them, and threatened one with a torque wrench. ECF No. 48-2, Ex. B, Affidavit of Samuel R. Barnsley, at ¶8. This behavior was apparently a result of the plaintiff's partial seizure, although there is no evidence suggesting that the employees were aware of that. The tire shop's owner, Samuel Barnsley, observed the plaintiff's odd behavior and became concerned about the safety of his employees, his customers, and himself. *Id.* Because of these concerns, he contacted the

Boulder Police. *Id.*

Officer Herman Kelt was the first officer to arrive in response to Mr. Barnsley's call. After observing the plaintiff's behavior and talking with the shop's employees, the officer asked Mr. Whitney to step outside behind the shop because he had become concerned about the safety of the plaintiff and the shop's employees. ECF No. 48 at 7; ECF No. 49 at 8. A second officer, Officer Sharon Ramos, arrived soon after and joined them behind the shop. ECF No. 48 at 7; ECF No. 49 at 8. Officer Kelt told the plaintiff that he was concerned about his frame of mind and present ability to drive, causing the plaintiff to become angry and respond "I've been driving for 39 years." ECF No. 48 at 8; ECF No. 49 at 10. Mr. Whitney also told the officers, in response to questions about any medications he takes, that he takes a seizure medication. ECF No. 48 at 8; ECF No. 49 at 10. After this interaction with the plaintiff, Officer Kelt decided to call in Officer John MacGregor, who had previously been certified as a drug recognition officer. ECF No. 48 at 8; ECF No. 49 at 10; ECF No. 49-3, Ex. 3, Deposition of John MacGregor, at 60–61.

When Officer MacGregor arrived, Officer Kelt briefed him on the situation. According to Officer MacGregor's report on the incident, Officer Kelt told him that the plaintiff "had been acting very strangely" and "might be on drugs." ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 1. Once Officer MacGregor began talking to the plaintiff, he noticed that Mr. Whitney "seemed very angry." *Id.* at 1. In light of the information he received from Officer Kelt and his initial conversation with Mr. Whitney, Officer MacGregor decided to administer a DUI/roadside maneuvers test. ECF No. 48 at 9; ECF No. 49 at 11. At one point during the test, the plaintiff nearly walked directly into a rack of tires, and Officer MacGregor had to grab his arm to stop him. ECF No. 48-3, Ex. C, Affidavit of Jose Alba, at ¶8; ECF No. 49-4, Ex. 4, Officer

MacGregor's Report, at 2. Furthermore, the plaintiff responded to some of Officer MacGregor's questions with a blank stare. ECF No. 49-4, Ex. 4, Officer MacGregor's Report at 2. The plaintiff has little to no recollection of these events. ECF No. 49 at 12.

After observing the plaintiff's odd behavior, Officer MacGregor concluded that, because of his "extremely agitated state," the plaintiff was "a danger to [Officer MacGregor] and the other officers present." ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 2. The officer was also concerned that Mr. Whitney might "hurt himself" and that he was "a danger to . . . others," especially given his intent to drive away from the tire shop. ECF No. 48-7, Ex. G, Deposition of John MacGregor, at 75:1, 80: 13–18. For these reasons, he determined that Mr. Whitney should be taken into custody. ECF No. 48 at 10–11; ECF No. 49 at 12–13. According to Officer MacGregor's deposition testimony, he intended to arrest the plaintiff for purposes of a mental health hold, a procedure under which officers can take a person who appears to be a danger to himself or others into temporary custody.[1] ECF No. 48-7, Ex. G, Deposition of John MacGregor, at 75:19–20.

Next, Officer MacGregor told the plaintiff that he was going to be handcuffed, and, according to all available accounts, the plaintiff immediately began resisting the officer's attempt to place handcuffs on him. *See* ECF No. 49-3, Ex. 3, Deposition of John MacGregor, at 84 (Mr. Whitney was "aggressively fighting" against Officer MacGregor); ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 2 (the plaintiff immediately pulled away when he was told he would be handcuffed and, once the handcuffs were on one arm, he pulled that arm away and up over his

---

[1] Plaintiff appears to argue that Officer MacGregor arrested the plaintiff for committing a crime; his response emphasizes that the officer told him that he was "under arrest." *See* ECF No. 49 at 12–13. However, as the discussion below makes clear, to the extent it is relevant, the fact that plaintiff was retained pursuant to a mental health hold rather than on suspicion of having committed a crime weighs in the plaintiff's favor for purposes of the present motion. Thus the Court assumes that he was taken into custody pursuant to a mental health hold.

3

head); ECF No. 49-5, Ex. 5, Deposition of Sharon Ramos, at 45–50 (Mr. Whitney was "fighting and pulling away" and "struggling, resisting, [and] yelling"); ECF No. 48-5, Ex. E, Deposition of Herman Kelt, at 41–42 (the plaintiff pulled away from and kicked at the officers). The plaintiff's memory of being handcuffed is limited; he apparently recalls being told to put his hands by his sides, but nothing else. ECF No. 49-7, Ex. 7, Deposition of Benson Whitney, at 288:5–11.

Because of the plaintiff's resistance, Officers Kelt and Ramos moved in to assist Officer MacGregor, and the officers brought Mr. Whitney to the ground. ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 2. When he continued to kick at them, the officers hobbled him. *Id.* However, in Officer MacGregor's words, none of the officers "ever struck, kicked, or kneed [Mr. Whitney] to subdue him and [they] only used open hand, physical force to handcuff or hobble him." *Id.* The tire shop's employees confirm this account. One employee's affidavit states that "[n]o officer hit, slapped, struck or kicked Mr. Whitney . . . even though he was struggling with them while on the ground, moving his head and body violently as the officers tried to restrain him." ECF No. 48-1, Ex. A, Affidavit of Luke A. Beam, at ¶12. Another reports that "[t]he officers did not throw him down or hit or kick [Mr. Whitney] or use anything like a Taser, mace or a baton while trying to control him. They simply appeared to be trying to keep [him] under control by holding him on the ground. . . . [He] was out of control." ECF No. 48-2, Ex. B, Affidavit of Samuel L. Barnsley, at ¶11. Finally, a third employee reports that he saw Mr. Whitney "hitting his head on the ground due to his struggles. I did not see any of the officers use force other than to try to control [Mr. Whitney] when he was on the ground. No officer hit, struck, slapped or kicked [him] despite his struggles against him." ECF No. 48-3, Ex. C, Affidavit of Jose Alba, at ¶10.

According to Mr. Whitney, he was "slammed to the ground" by the officers. ECF No.

4

49-7, Ex. 7, Deposition of Benson Whitney, at 240:15–17. However, his memory of the event is limited to "getting the cuffs and getting dropped." *Id.* at 241:1–2. Specifically, he remembers Officer MacGregor telling him to put his hands by his sides, then being "on the ground in pain. Next thing I remember, in the ambulance. A, B, C." *Id.* at 283: 8–13. At another point in his deposition, he admitted that he has "no recollection of how [he] ended up on the ground, but [he] remember[s] being on the ground." *Id.* at 287:13–16. The plaintiff does not dispute the fact that the officers "employed only soft-hand control techniques, a take-down, and a restraint device to overcome [p]laintiff's defensive resistance." ECF No. 48 at 13; ECF No. 49 at 16. Thus, construing the facts in the light most favorable to the plaintiff, it appears that after Mr. Whitney resisted the officers' attempts to handcuff him, they used some significant amount of force to bring him to the ground. However, all the evidence before the Court suggests that Mr. Whitney actively resisted the officers' efforts to control him throughout the encounter.

In fact, the plaintiff was still struggling against the officers and resisting their attempts to get him under control when paramedics arrived to take him to the hospital. ECF No. 48-11, Ex. K, Deposition of Conor Moran, at 18:9, 19:1–15 (the plaintiff was "struggling quite a bit" and screaming at the top of his lungs"); ECF No. 48-12, Ex. L, Deposition of David Kabal, at 12:13–16 (Mr. Whitney was "struggling fairly violently" against the police). After observing Mr. Whitney's behavior, the paramedics assisted the officers in restraining him. ECF No. 48-11, Ex. K, Deposition of Conor Moran, at 21:2–14. Eventually, he was taken by ambulance to Boulder Community Hospital. It appears that the plaintiff sustained minor injuries to his head and wrist,[2] *see* ECF No. 49-6, Ex. 6, Photos, but the hospital did not hold him for any significant amount of

---

[2] The plaintiff's response notes that he also "complains of an aggravation of injuries that he had suffered in a car wreck approximately ten months before this incident," ECF No. 49 at 2, but there does not appear to be any evidence in the record documenting such injuries.

5

time. A few hours after his encounter with the police, Mr. Whitney was seen walking to his truck, getting in it, and driving away. ECF No. 48 at 12; ECF No. 49 at 14.

## II. Discussion.

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

Plaintiff's Amended Complaint sets out a claim against Officer McGregor for unlawful and excessive use of force under 42 U.S.C. § 1983 and a claim against the City of Boulder for failure to train and properly supervise employees on how to interact with a person with epilepsy. ECF No. 19 at 6, 7. Defendants have jointly moved for summary judgment on both claims. ECF No. 48. The Court will address each claim in turn.

### A. Excessive Force.

"The Supreme Court has [held] . . . that a 'free citizen's claim [under § 1983] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop,

or other 'seizure' of his person is subject to the Fourth Amendment's 'objective reasonableness' standard." *Culver v. Town of Torrington, Wyo.*, 930 F.2d 1456, 1460 (10th Cir. 1991) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). This reasonableness inquiry requires consideration of "the factual circumstances of every case; relevant factors include [1] the crime's severity, [2] the potential threat posed by the suspect to the officer's and others' safety, and [3] the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 388). However, "[t]here is no requirement that all of these criteria be satisfied before a use of force can be objectively reasonable." *Gutierrez v. Hackett*, 131 F. App'x 621, 624 (10th Cir. 2005) (unpublished). In addition to the *Graham* factors listed here, the Tenth Circuit has recently articulated additional factors relevant to the excessive force analysis in cases involving mentally disturbed individuals. *See Aldaba v. Pickens*, 777 F.3d 1148, 1155–57 (10th Cir. 2015). In weighing the *Graham* and *Aldaba* factors, "[t]he reasonableness of an officer's conduct must be assessed from the perspective of a reasonable officer on the scene, recognizing the fact that the officer may be forced to make split-second judgments under stressful and dangerous conditions." *Medina*, 252 F.3d at 1131 (internal citation and quotations omitted). The circuit has made clear that, when the relevant facts are uncontroverted, "the question of objective reasonableness is *not* for the jury to decide." *Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007) (emphasis in original).

In the present case, plaintiff contends that Officer MacGregor used excessive force when handcuffing the plaintiff and placing him on the ground.[3] ECF No. 19 at ¶¶28–33. The Court thus analyses this conduct in light of the three factors set forth in *Graham* and the additional

---

[3] Officer MacGregor also grabbed the plaintiff's arm to prevent him from walking into a tire rack during the roadside maneuvers test. ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 2. To the extent plaintiff intends to base his excessive force claim on this conduct, the Court finds that it was objectively reasonable for the officer to use a minimal amount of force to prevent the plaintiff from walking into a rack of tires.

factors articulated in *Aldaba*.  Then, in light of those factors, the Court considers the objective reasonableness of Officer MacGregor's use of force.

1. **The Crime's Severity.**

Beginning with the first *Graham* factor, the Court considers the severity of the crime at issue when the plaintiff was subject to the officer's use of force.  *See Medina*, 252 F.3d at 1131. Here, the plaintiff was restrained pursuant to a mental health hold, and there is no evidence suggesting that Mr. Whitney may have committed a serious crime or that Officer MacGregor suspected that he had.  Thus the first factor weighs in Mr. Whitney's favor.  *Cf. Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) (the first *Graham* factor weighs in plaintiff's favor when no serious crime is at issue).

2. **The Threat to the Officer's and Others' Safety.**

Turning to the second factor, the uncontroverted facts show that, from Officer MacGregor's perspective, the plaintiff did pose a potential threat to the safety of the officers and other people at the tire shop at the time he was handcuffed and taken to the ground.  According to Officer MacGregor's report on the incident, when he arrived at the shop, Officer Kelt told him that the plaintiff "had been acting very strangely" and "might be on drugs."  ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 1.  Once Officer MacGregor began talking to the plaintiff, he noticed that Mr. Whitney "seemed very angry."  *Id.*  The plaintiff was also behaving strangely; he would offer only a blank stare in response to Officer MacGregor's questions, and he nearly walked into a rack of tires during the roadside maneuvers test.  *Id.* at 2.  After observing the plaintiff's odd behavior, the officer concluded that, because of his "extremely agitated state," the plaintiff was "a danger to [Officer MacGregor] and the other officers present."  *Id.*  The officer was also concerned that Mr. Whitney might "hurt himself" and that he was "a danger to . . .

others," especially given his intent to drive away from the tire shop. ECF No. 48-7, Ex. G, Deposition of John MacGregor, at 75:1, 80: 13–18.

These concerns were reinforced when Mr. Whitney immediately began resisting Officer MacGregor's attempts to handcuff him. In Officer MacGregor's words, when the three officers together tried to handcuff the plaintiff, he was "aggressively fighting them" and "actively resisting" their efforts. ECF No. 49-3, Ex. 3, Deposition of John MacGregor, at 84. The other two officers who were present at the scene also reported that the plaintiff was struggling against and kicking at them. *See* ECF No. 49-5, Ex. 5, Deposition of Sharon Ramos, at 45–50; ECF No. 48-5, Ex. E, Deposition of Herman Kelt, at 41–42. The tire shop employees' accounts of the incident confirm that the plaintiff fought against the officers throughout the encounter. *See* ECF No. 48-1, Ex. A, Affidavit of Luke A. Beam, at ¶12; ECF No. 48-2, Ex. B, Affidavit of Samuel L. Barnsley, at ¶11; ECF No. 48-3, Ex. C, Affidavit of Jose Alba, at ¶10. In sum, Mr. Whitney exhibited odd behavior and appeared extremely agitated before he was handcuffed, and he was actively resisting arrest immediately prior to being brought to the ground. Thus Officer MacGregor had reason to believe that the plaintiff was a safety threat prior to both handcuffing him and taking him to the ground.

The record contains no evidence undermining this account of the plaintiff's behavior and state of mind immediately prior to the officers' use of force. The plaintiff has not presented any evidence suggesting that, from Officer MacGregor's perspective, the plaintiff did not pose a safety threat at the point in time at which the officer attempted to handcuff him.[4] As for the time

---

[4] In response to the defendant's statement of fact that Officer MacGregor determined that a mental health hold was appropriate because of Mr. Whitney's behavior and state of mind, the plaintiff's response argues only that the evidence does not show that the officer decided that a mental health hold was appropriate. ECF No. 49 at 12–13. It does not assert that Officer MacGregor did not have reason to believe that the plaintiff was a threat to the officers' and others' safety, *see id.*, nor does any evidence before the Court suggest as much. Additionally, the plaintiff argues that "at no place in the record does it indicate that Mr.

period immediately prior to the plaintiff's being taken to the ground, the plaintiff's response argues that "[t]here are a number of eye witness descriptions" as to how Mr. Whitney behaved. ECF No. 49 at 13. However, none of the evidence he cites in support of this assertion undermines the conclusion that Officer MacGregor perceived Mr. Whitney as a danger to the officers and other people at the tire shop. *See* ECF No. 49-3, Ex. 3, Deposition of John MacGregor, at 84 (plaintiff was "aggressively fighting" the officers and Officer MacGregor "got kicked several times"); ECF No. 49-5, Ex. 5, Deposition of Sharon Ramos, at 45–50 (Mr. Whitney was angry and struggling against the officers, and Officer Ramos was concerned about the officers' safety); ECF No. 48-5, Ex. E, Deposition of Herman Kelt, at 41–42 (plaintiff resisted handcuffing and kicked at officers when on the ground). Thus, even construing the evidence in the light most favorable to the plaintiff, the Court finds that, from Officer MacGregor's perspective, Mr. Whitney posed a threat to his and others' safety. For this reason, the second factor weighs in defendants' favor.

### 3. **Mr. Whitney's Attempts to Resist Arrest.**

Moving on to the third *Graham* factor, there is ample uncontroverted evidence, as mentioned in the above analysis, that the plaintiff resisted the officers' attempts to handcuff him and bring him to the ground. All three officers report that Mr. Whitney fought back against them, which required them to increase the amount of force they were using to control him. *See* ECF No. 49-3, Ex. 3, Deposition of John MacGregor, at 84; ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 2; ECF No. 49-5, Ex. 5, Deposition of Sharon Ramos, at 45–50; ECF No. 48-5, Ex. E, Deposition of Herman Kelt, at 41–42. The plaintiff was still struggling against

---

Whitney would have driven." ECF No. 49 at 11. However, Officer MacGregor referred to the plaintiff's "statement he was going to drive from the scene" at his deposition, ECF No. 48-7, Ex. G, Deposition of John MacGregor, at 80:17–18, and, moreover, the plaintiff had driven to the tire shop.

the officers and resisting their efforts to control him when the paramedics arrived. ECF No. 48-11, Ex. K, Deposition of Conor Moran, at 19:1–15; ECF No. 48-12, Ex. L, Deposition of David Kabal, at 12:13–16 (Mr. Whitney was "struggling fairly violently" against the police). In fact, the paramedics assisted in restraining the plaintiff after observing the situation at hand upon their arrival. ECF No. 48-11, Ex. K, Deposition of Conor Moran, at 21:2–14. The tire shop employees also observed Mr. Whitney's resistance; their affidavits note that the plaintiff was "screaming loudly and struggling with [the officers] while on the ground" and "struggling constantly" against them. ECF No. 48-1, Ex. A, Affidavit of Luke A. Beam, at ¶12; ECF No. 48-2, Ex. B, Affidavit of Samuel L. Barnsley, at ¶11. The plaintiff has presented no evidence contradicting this account of events described by the officers, paramedics, and tire shop employees.[5] Thus the third factor weighs strongly in the defendants' favor.

### 4. The Additional *Aldaba* Factors.

The Tenth Circuit has recently recognized three additional factors relevant to the Fourth Amendment excessive force analysis in cases involving a mentally disturbed person: (1) the need to protect a plaintiff from self-harm, (2) the plaintiff's emotional or mental disturbance, and (3) whether the law enforcement officers knew or should have known that the individual had special characteristics making him more susceptible to harm from the particular use of force at issue. *Aldaba*, 777 F.3d at 1155–57. Here, given the plaintiff's odd behavior, Officer MacGregor had reason to believe that the plaintiff might harm himself if not taken into protective custody. *See* ECF No. 48-7, Ex. G, Deposition of John MacGregor, at 75:1 (officer was concerned that Mr.

---

[5] The evidence cited by the plaintiff's response either confirms that Mr. Whitney resisted the officers' attempts to handcuff him, *see* ECF No. 49-3, Ex. 3, Deposition of John MacGregor, at 84; ECF No. 49-4, Ex. 4, Officer MacGregor's Report, at 2; ECF No. 49-5, Ex. 5, Deposition of Sharon Ramos, at 45–50; ECF No. 48-5, Ex. E, Deposition of Herman Kelt, at 41–42, or does not mention any resistance or lack thereof on the plaintiff's part, *see* ECF No. 49-7, Ex. 7, Deposition of Benson Whitney, at 240–41, 283, 286–88. The plaintiff's deposition testimony makes clear that he does not remember most of what occurred during the time he was handcuffed and taken to the ground. *See id.* at 283:4–13, 287–90.

Whitney might "hurt himself"). As for the second factor, the plaintiff was clearly mentally and emotionally disturbed, and thus the officers' use of force likely exacerbated the situation to some extent. *See Aldaba*, 777 F.3d at 1156. Nevertheless, this factor weighs in a plaintiff's favor most strongly where a disturbed individual "has committed no crime and poses a threat only to himself," *id.*, and here, as noted above, there is uncontroverted evidence that Mr. Whitney posed a threat to the officers and the public. Lastly, although Officer MacGregor was apparently aware that the plaintiff took medication for seizures, there is no evidence suggesting that this condition made him more susceptible to harm from being handcuffed and taken to the ground.[6] Thus, on balance, the additional factors laid out in *Aldaba* tend to support the conclusion that Officer MacGregor's conduct was objectively reasonable.

### 5. Reasonableness.

In light of the six factors discussed above, the Court finds that Officer MacGregor's use of force was objectively reasonable. Although the officer did not suspect Mr. Whitney of any crime, he had ample reason to perceive the plaintiff as a threat to his and others' safety, the plaintiff continuously struggled against the officers throughout the encounter, and the additional

---

[6] Although plaintiff might argue that Mr. Whitney's disturbed state of mind at the time he was taken to the ground caused him to thrash about in a manner that likely caused or exacerbated the injuries he suffered, *see, e.g.*, ECF No. 48-1, Ex. A, Affidavit of Luke A. Beam, at ¶12 (plaintiff was "moving his head and body violently as the officers tried to restrain him" on the ground), this seems to be a different type of scenario than the ones considered by the Tenth Circuit in discussing this third factor in *Aldaba*. There, the circuit noted that the plaintiff's compromised physical condition—caused by pneumonia— made him more susceptible to harm from the officers' use of a taser. *Aldaba*, 777 F.3d at 1157. The court also cited *Cruz v. City of Laramie*, 239 F.3d 1183 (10th Cir.2001), in which the use of hog-tie restraints was found to be unreasonable when officers knew or should have been on notice that the subject had a diminished capacity and was accordingly more likely to experience positional asphyxia from the use of such restraints. *Id.* at 1156. In the present circumstances, Mr. Whitney did not have any underlying physical condition that made him more susceptible to harm from being placed on the ground; rather, his mental state itself may have made him more susceptible to the injuries he suffered. This fact is thus more appropriately considered under the second *Aldaba* factor.

*Aldaba* factors tend to favor defendants.[7] *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 781 (10th Cir. 1993) (finding police conduct objectively reasonable where first two *Graham* factors weighted in plaintiff's favor, but third strongly weighed in favor of defendants). Thus it was objectively reasonable for Officer MacGregor to arrest the plaintiff and, when he strongly resisted arrest, to bring him to the ground, even if he did so in a manner that could be described as "slamming" the plaintiff to the ground. Indeed, plaintiff's own police practices expert opined that he had "no problem" with what the officers "physically did," and stated that the officers "did not use an excessive method of force to put [Mr. Whitney] on the ground." ECF No. 48-9, Ex. I, Deposition of Roger L. Willard, at 143:14–144:8 (noting that Mr. Willard's only issue with the officers' conduct was the decision to retain the plaintiff pursuant to a mental health hold). For these reasons, I grant the defendants' motion for summary judgment as to the excessive force claim against Officer MacGregor.[8]

### B. **Municipal Liability**.

"It is well established . . . that a municipality cannot be held liable under §1983 for the acts of an employee if . . . the municipal employee committed no constitutional violation."

---

[7] The Court notes that the Tenth Circuit has placed a great deal of emphasis on subjects' resistance to arrest in the Fourth Amendment excessive force context. *See, e.g.*, *Aldaba*, 777 F.3d at 1158 ("Under [the third *Graham*] factor, a higher level of force may be employed when the subject is actively resisting or attempting to evade arrest by flight."); *Hinton*, 997 F.2d at 781 (although plaintiff was stopped only for disturbing the peace and posed no threat to the police or the public, officers did not use excessive force when they wrestled him to the ground and employed a stun gun because he was "actively and openly" resisting arrest); *Hawker v. Sandy City Corp.*, 591 F. App'x 669, 675 (10th Cir. 2014) (officer's use of a "twist-lock" hold on nine year-old's arm that resulted in hairline fracture was objectively reasonable because child had resisted arrest by "grabbing [the officer's] arm").

[8] The plaintiff's response argues that the officers' use of force was excessive because "[n]o incident would have occurred if Officer MacGregor had not told Mr. Whitney that Mr. Whitney was under arrest and then proceeded to take him into custody, when Officers were not justified in doing so." ECF No. 49 at 18. However, "in an excessive force inquiry, [courts] ask whether the force used would have been reasonably necessary *if the arrest or the detention were warranted.*" *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (internal citation and quotations omitted) (emphasis in original). Thus whether Officer MacGregor had reason to hold the plaintiff pursuant to a mental health hold is immaterial to the question presently before the Court.

*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.1998).  Thus, the Court also grants defendants' motion as to plaintiff's claim for municipal liability.

### III. Conclusion and Order.

Defendants' Motion for Summary Judgment [ECF No. 48] is GRANTED.  This action and all claims therein are dismissed with prejudice.  Defendants are awarded their costs pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 2nd day of July, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge